IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


ANTHONY NASTATOS,                    :
                                     :
                   Petitioner,       :
                                     :
        v.                           :        Civil Action No. 20-180-RGA
                                     :
ROBERT MAY, Warden, and              :
ATTORNEY GENERAL OF THE              :
STATE OF DELAWARE,                   :
                                     :
                   Respondents.      :

_____

Anthony Nastatos.  *Pro se* Petitioner.

Kathryn Joy Garrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

_____


**<u>MEMORANDUM OPINION</u>**


March 1, 2023
Wilmington, Delaware

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Anthony Nastatos is an inmate at the James T. Vaughn Correctional Center in

Smyrna, Delaware.  Pending before the Court is Petitioner's Petition for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254.  (D.I 3)  The State filed an Answer in opposition.  (D.I. 15)

For the reasons discussed, the Court will deny the Petition.

## I.   BACKGROUND

> [Petitioner] and [the victim] met at work in August 2009 and developed a friendly relationship.  Soon after they met, [Petitioner] anonymously covered [the victim's] car with flower petals.  He later admitted to the act and told her he had romantic feelings for her. [The victim] told [Petitioner] she did not have romantic feelings for him.  A few days later, they went shopping together, had dinner at a restaurant, and met another co-worker for drinks. [Petitioner's] behavior that night made [the victim] uncomfortable.  [The victim's] discomfort forced her to cancel other plans they had made together. After that, she avoided [Petitioner].
>
> Over the following months, [Petitioner] repeatedly attempted contact with [the victim] by regularly sending lengthy love poetry via text messages; waiting for her after work; friending her on Facebook from accounts under his name and a pseudonym; and sending private messages over Facebook.  After [the victim] shared with her co-worker and manager a particular text from him, the manager transferred [Petitioner] to another location.
>
> Around this time, [the victim] made her first report to the New Castle County Police Department. The NCCPD told [the victim] to block [Petitioner's] cell phone number, which she did. [Petitioner] continued to regularly contact her through Facebook.  [The victim] again contacted the NCCPD.  The police visited [Petitioner], who claimed he and [the victim] were dating. The police advised [Petitioner] to stay away from [the victim]. After [Petitioner] persisted in sending her messages, the NCCPD arrested [Petitioner].

*Nastatos v. State*, 224 A.3d 201 (Table), 2019 WL 7041891, at *1 (Del. Dec. 20, 2019).  Following

his arrest on October 12, 2010, as a condition of his bond, the Delaware Superior Court ordered

Petitioner to have no contact with the victim.  (D.I. 16-5 at 12; D.I. 16-11 at 9; D.I. 16-15 at Entry

No. 1)  On October 29, 2010, the stalking charge was reduced to two counts of harassment and

prosecuted in the Court of Common Pleas.  (D.I. 16-15 at 6)

> [Petitioner] continued to regularly send [the victim] Facebook
> messages and even messaged [the victim's] father.  [Petitioner]
> eventually arrived at the restaurant that was [the victim's] primary
> place of employment and attempted to speak with [the victim].  [The
> victim] ran to her car.  As she was fleeing, [Petitioner] threw a ring
> box at her.  [The victim] contacted the NCCPD.  [Petitioner] sent
> [the victim] more Facebook messages.  After [the victim] contacted
> the NCCPD, they arrested [Petitioner] [on February 23, 2011] for
> additional charges.  The Justice of the Peace issued a second no-
> contact order.

*Nastatos*, 2019 WL 7041891, at *2.  After his arrest on February 23, 2011, Petitioner was

charged with one count of stalking and twenty counts of misdemeanor non-compliance with

bond conditions ("NCBC").  (D.I. 16-1 at Entry No. 1)  On April 26, 2011, the Superior Court

ordered Petitioner to undergo a psychiatric evaluation.  (D.I. 16-1 at Entry No. 2)

The two cases were consolidated and, on June 20, 2011, a New Castle County grand jury

indicted Petitioner for charges related to both his October 20, 2010 and February 23, 2011

arrests. (D.I. 16-1 at Entry Nos. 4, 5; D.I. 16-15 at Entry No. 3)  The existing no-contact

provisions remained in effect.  (D.I. 15 at 2)

> [W]hile incarcerated, [Petitioner] sent [the victim] three letters.  For
> each letter the police charged [Petitioner] with one count of felony
> Breach of Conditions of Bond During Commitment.  He was also
> charged with Stalking and one count of misdemeanor Non–
> Compliance with Bond Conditions for each of the Facebook
> messages he sent to [the victim] after the court entered the bond
> condition.
>
> At first, [Petitioner] was found incompetent to stand trial due to
> mental illness.  But, after treatment at a separate facility,
> [Petitioner's] competency was found restored.  Upon returning to
> the custody of Delaware Department of Corrections, [Petitioner]
> stopped taking his medications and was again found incompetent.

He returned to the facility for further treatment and eventually agreed to cooperate with the program.

*Nastatos*, 2019 WL 7041891, at *2.

On May 21, 2012, Petitioner was re-indicted and charged with twenty-two counts of misdemeanor non-compliance with bond conditions ("NCBC"), one count of stalking, and three counts of felony breach of conditions of bond during commitment ("BCBDC").  (*See* D.I. 16-2 at 5; D.I. 16-5 at 6).[1]  (D.I. 16-3 at 4-11; DI. 16-12 at 24-31)  In August 2012, Petitioner was declared competent to stand trial. (D.I. 16-3 at Entry Nos. 37, 38); *see also Nastatos*, 2019 WL 7041891, at *2.  Petitioner's case proceeded to trial in December 2012.

During trial, [Petitioner's] counsel objected to the admission of thirty-eight emails, Facebook messages, and letters sent by [Petitioner] for the failure to properly authenticate them. The court conditionally admitted all thirty eight, but later decided to exclude six and instructed the jury not to consider the six rejected messages.

*Nastatos*, 2019 WL 7041891, at *2.  On December 19, 2012, the jury found Petitioner guilty of three counts of felony BCBDC, one count of harassment (as a lesser-included-offense of stalking), and sixteen counts of misdemeanor NCBC.  (D.I. 16-15 at 38-39)  The Superior Court sentenced Petitioner on March 1, 2013 to sixteen years at Level V, to be followed by decreasing

---

[1]The State asserts, and the record reveals, that the State *nolle prossed* six counts of NCBC after exhibits were excluded at trial, and the jury found Petitioner guilty of sixteen counts of NCBC. (D.I. 15 at 3; D.I 16-1 at Entry No. 50; D.I. 16-15 at 26)  Yet, the Re-Indictment in the state court record – which is timestamped May 21, 2012 – only lists sixteen counts of NCBC.  (D.I. 16-3 at 4-11; DI.16-12 at 24-31)  Given the discrepancy (twenty-two counts vs. sixteen counts of NCBC), it appears that the copy of the Re-Indictment in the record is actually a copy of the version of the Re-Indictment that the Superior Court provided to the jury for its deliberations – after six counts of NCBC had been withdrawn – rather than the original Re-Indictment with the twenty-two counts of NCBC.  This conclusion is supported by the fact that, when instructing the jury, the Superior Court stated, "Ladies and Gentlemen, I have what has – will come back to you as the indictment, and there are 20 counts here. … There are certain omissions which have been stricken by the Court upon motion of the parties, or the State. … You need not wonder why any action to exclude a particular count or charge was taken."  (D.I. 16-5 at 29)

levels of supervision. (D.I. 16-12 at 159-167) Petitioner appealed. On April 15, 2014, the

Delaware Supreme Court affirmed Petitioner's convictions and sentences. *See Nastatos v. State*,

91 A.3d 562 (Table), 2014 WL 1512887, at *6 (Del. Apr. 15, 2014).

On April 8, 2015, Petitioner filed a *pro se* motion for postconviction relief pursuant to

Delaware Superior Court Criminal Rule 61 ("Rule 61 motion), followed by a motion for the

appointment of counsel. (D.I. 16-1 at Entry No. 13; D.I. 16-19) The Superior Court appointed

postconviction counsel, who filed an amended Rule 61 motion on September 1, 2016. (D.I. 16-

13 at 3-54) Petitioner's trial and appellate counsel filed Rule 61 affidavits in response to

Petitioner's allegations of ineffective assistance. (D.I. 16-13 at 55-61) The State filed its

response on September 19, 2017. (D.I. 16-15 at 40-103) The Superior Court held an evidentiary

hearing on July 23, 2018, during which Petitioner's trial and appellate counsel each testified.

(D.I. 16-12 at 120-33) On May 13, 2019, the Superior Court denied Petitioner's Rule 61 motion.

*See State v. Nastatos*, 2019 WL 2092016 (Del. Super. Ct. May 13, 2019). The Delaware

Supreme Court affirmed that decision on December 20, 2019. *See Nastatos*, 2019 WL 7041891,

at *7.

## II.     GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). The United States Code states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted unless it appears that –

4

> (A) the applicant has exhausted the remedies available in the courts
> of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to
> protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).  This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).  If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding.  *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted but procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).  Such claims, however, are procedurally defaulted.  *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses

to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See Coleman,* 501 U.S. at 750-51; *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999).  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Id.* at 494 (emphasis omitted).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[2] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy

---

[2]*Murray*, 477 U.S. at 496.

eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### B.   Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim "on the basis of its substance, rather than on a procedural, or other, ground."  *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).  The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  As explained in *Harrington*, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.  The Supreme Court expanded the purview of the *Richter* presumption in *Johnson v. Williams*, 568 U.S. 289 (2013).  Pursuant to *Johnson*, if a petitioner has presented the claims raised in a federal habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that

7

the state court adjudicated the unaddressed federal claims on the merits. *Id*. at 298-301. The consequence of this presumption is that the federal habeas court will then be required to review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] *de novo*." *Id*. at 292-93.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## III.   DISCUSSION

The Petition asserts the following seven grounds for relief:  (1) trial counsel provided ineffective assistance (D.I. 3 at 5-10); (2) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to supply trial counsel with copies of the victim's cell phone records (D.I. 3 at 12); (3) Petitioner's right to a fair trial was denied due to cumulative error (*id*. at 15); (4) appellate counsel provided ineffective assistance by failing to raise the issue of cumulative error on direct appeal (*id*. at 15); (5) due to appellate counsel's ineffective assistance, Petitioner is entitled to a new sentencing hearing before a different judge (*id*. at 17); (6) the Superior Court violated Petitioner's Sixth and Fourteenth Amendment rights by allowing the State to introduce thirty-eight documents without properly authenticating them (*id*. at 19); and (7) the Superior Court sentenced Petitioner with a closed mind and based the sentence on impermissible and

8

erroneous facts, and his sentence violated the Eighth Amendment prohibition on cruel and unusual punishment (*id*. at 21).

### A.  Claim One:  Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel provided ineffective assistance ("IATC") by: (1) failing to request a limiting instruction and/or failing to limit the State's references to prior bad acts or mental health issues during the trial; (2) failing to object to Officer Clarke's impermissible hearsay testimony; (3) failing to object to repeated prejudicial errors the State committed while questioning the victim; and (4) failing to object to the trial court's inadequate limiting instruction on inadmissible evidence.  Petitioner presented each of these arguments to the Superior Court in his Rule 61 motion and to the Delaware Supreme Court on post-conviction appeal.  *See Nastatos*, 2019 WL 2092016, at *9-10; *Nastatos*, 2019 WL 7041891, at *3-4.  Both courts denied Petitioner's IATC allegations in Claim One as meritless.  Consequently, Claim One will only warrant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of trial claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *See Strickland*, 466 U.S. at 688.  Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Id.*

9

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689. A court may deny an ineffective assistance of counsel claim by only deciding one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to Petitioner's IATC allegations. Consequently, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware state courts' denial of Petitioner's ineffective assistance of counsel allegations through a "doubly deferential" lens.[3] *Id.* "[T]he question is not whether counsel's actions were

---

[3]As explained by the *Richter* Court,

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

The Superior Court denied all four allegations of IATC for failing to satisfy the prejudice prong of *Strickland* without addressing *Strickland*'s performance prong. The Delaware Supreme Court affirmed the Superior Court's decision while also only considering *Strickland*'s prejudice prong, and denied all four allegations of IATC after determining that Petitioner could not show he was prejudiced. The fact that the Delaware state courts only considered the prejudice prong of the *Strickland* standard without addressing trial counsel's actions under *Strickland*'s performance prong does not amount to an unreasonable application of *Strickland*. *See Strickland*, 466 U.S. at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) ("Our Court has endorsed the practical suggestion in *Strickland* that we may consider the prejudice prong before examining the performance of counsel prong because this course of action is less burdensome to defense counsel.") (cleaned up). Nevertheless, the Court must still determine if the Delaware state courts unreasonably applied *Strickland* when concluding that Petitioner did not demonstrate he was prejudiced by trial counsel's purported errors.

Given the overlap between the IATC issues and evidence, the state courts addressed all four of Petitioner's IATC allegations at once, rather than separately, when concluding that Petitioner was not prejudiced by trial counsel's actions. For ease of analysis, the Court will

11

utilize the same approach after providing separate summaries of Petitioner's four IATC allegations.

**1. Trial counsel failed to limit the State's references to bad acts and mental health issues during the trial**

During Petitioner's trial, the State admitted several statements that included Petitioner's comments about previously being incarcerated and possible mental illness.  The comments were written by Petitioner in documents to the victim, and included the following:

- "[b]ut I did go to jail"

- "again I'll be in Gander"

- "I've been in jail before, longest bit, one year.   A lot of people can't handle jail, it definitely tests a person. Though I'd rather be free, I'm fine."

(D.I. 16-18 at 47, 61, 70)

- "[f]irst, I have an OCD"

- "I ended up in a hospital"

- "I woke up in Meadow Wood"

- "[w]hen I was in Meadow Wood"

- "I was diagnosed delusional"

- "[t]hey sent us to State Hospital – they sent me to the State Hospital for treatment because I believe the above statement. They pumped me full of drugs for months."

(D.I. 16-18 at 50, 57, 58, 60, 68)  The comments were read into evidence during the State's case-in-chief to prove the elements of the charged offenses.  (D.I. 16-12 at 45-77)  Trial counsel objected to the introduction of every piece of evidence related to the messages Petitioner sent to the victim based on lack of foundation.  (D.I. 16-12 at 52-77)  When the State brought up the

12

concerning references (D.I. 16-20 at 2-3), the Superior Court noted that the comments were likely not inadmissible under Delaware Rule of Evidence 404(b), but that it might be willing to generally instruct the jury at the end of the trial not to use such information for an improper purpose.  (D.I. 16-20 at 3)  The Superior Court conditionally admitted the evidence, giving the State the opportunity to lay a complete foundation.  (D.I. 16-12 at 52-77)  All but six of the documents were ultimately admitted.  (D.I. 16-4 at 68-72; D.I. 16-15 at 15-20)  When the time came to request a curative instruction, trial counsel stated that he was not asking for it.  (D.I. 16-15 at 28)

In his Rule 61 motion, Petitioner argued that the statements should have been excluded as impermissible prior bad acts and character evidence and that trial counsel was ineffective for failing to object to the statements or to request a limiting instruction.  (D.I. 16-11 at 16; D.I. 16-13 at 20-23)

### 2.   Trial counsel failed to object to Officer Clarke's hearsay testimony

During direct examination of Officer Clarke, the State elicited testimony about prior consistent statements the victim had made to the police officer.  (D.I. 16-19 at 2, 4-5)  Although trial counsel did not object to those portions of Officer Clarke's testimony, the statements were hearsay and were not admitted under 11 Del. Code § 3507.  (D.I. 15 at 16)  In his Rule 61 motion, Petitioner argued that trial counsel was ineffective for not objecting to the statements. (D.I. 16-11 at 16; D.I. 16-3 at 24-29)

### 3.   Trial counsel failed to object to the victim's comments during direct examination

The victim testified that she had received text messages from Petitioner.  (D.I. 16-12 at 38)  Trial counsel objected because the State had presented nothing, other than the victim's

belief, to prove that the texts were from Petitioner.  (*Id*.)  The Superior Court overruled the objection, and the State elicited additional testimony that the victim and Petitioner had exchanged telephone numbers and that the number the texts came from was the number provided by Petitioner.  (*Id*.)  The victim further testified that the text message about a secret admirer came from the phone number that Petitioner had provided to her as his number.  (*Id*.)  The victim stated that she and Petitioner also had an in-person conversation about the content of the text messages concerning flower petals on her car.  (D.I 16-12 at 39)  This additional testimony laid the foundation for the testimony that the victim received multiple text messages from Petitioner.

The victim also testified about numerous messages she received on Facebook.  Although the victim initially testified that the messages were from Petitioner, the Superior Court corrected her and she then testified that the messages purported to be from Petitioner.  (D.I. 16-12 at 50, 56, 60-77)  In his Rule 61 motion, Petitioner argued that trial counsel was ineffective for failing to object to the victim's impermissible comments that the messages had come from Petitioner. (D.I. 16-11 at 16; D.I. 16-13 at 30-32)

### 4.   Trial counsel failed to object to the "generic and unspecified" curative instruction

During trial, the State introduced thirty-five Facebook documents, which the Superior Court conditionally admitted to allow the State to establish a foundation. (D.I. 16-12 at 52-77) After briefing and argument, the Superior Court admitted all but six of the thirty-five documents. (D.I. 16-4 at 68-72)  The Superior Court excluded three of those exhibits (exhibits 3, 15, and 19) because they were not "probative of much," one of the exhibits (exhibit 28) because there was not sufficient information to conclude it had come from Petitioner, and the other two of the six exhibits (exhibits 29 and 30) "out of an abundance of caution."  (D.I. 16-4 at 70-71)

Before deliberations, the Superior Court instructed the jury: "You are instructed that the State's offer of evidence of six Facebook messages has been denied by the Court.  That information is not part of the record in this case.  It cannot therefore be considered by you for any purpose."  (D.I. 16-15 at 36)  In his Rule 61 motion, Petitioner claimed that trial counsel was ineffective for failing to object to the limiting instruction because it was not sufficient to cure any prejudice resulting from the excluded evidence that the jury heard.  (D.I. 16-11 at 16; D.I. 16-13 at 33-35)

### 5.   Delaware courts' adjudication of the four IATC allegations

As previously explained, the Superior Court did not evaluate trial counsel's actions underlying the four IATC allegations in Claim One under *Strickland*'s performance prong. Instead, the Superior Court held that Petitioner could not demonstrate that he was prejudiced by any of those purported errors on trial counsel's part.

The Superior Court considered the allegations related to the NCBC and BCBDC charges first, explaining that the State only needed to show that Petitioner had breached a condition of release or bail, in this case, a no-contact order.  *See Nastatos*, 2019 WL 2092016, at *10.  The Superior Court noted that there was "extensive and incontrovertible" evidence of Petitioner's contact with the victim in breach of the no-contact orders, and the "only issue for both the BC[B]DC and NCBC charges was whether [Petitioner] knowingly had contact with" the victim. *Nastatos*, 2019 WL 2092016, at *10.  During closing argument, trial counsel argued that the State should have gone to greater lengths to prove that the communications came from someone impersonating him.  The Superior Court rejected the defense theory of impersonation, opining:

> No reasonable juror would consider that explanation as raising a
> reasonable doubt of [Petitioner's] guilt.  Thus, it is clear […] that
> the jury's verdicts on the BC[B]DC and NCBC counts [were] not

15

> affected by knowing that [Petitioner] had been incarcerated and had
> mental health issues, any alleged improper hearsay testimony from
> Officer Clarke, any alleged improper questioning of the
> complaining witness on direct examination, or the absence of an
> adequate limiting or cautionary instruction. In short, the evidence
> against [Petitioner] on these counts was so strong that any [of] the
> claimed performance errors by Trial Counsel had no bearing on the
> jury's verdicts.  There is very little chance the outcome would have
> been different.

*Nastatos*, 2019 WL 2092016, at *10.

The Superior Court then turned to the stalking charge, which alleged that Petitioner: "(1)

knowingly engaged in a course of conduct; (2) directed at [the victim]; (3) that would cause a

reasonable person to fear physical injury or suffer other significant mental anguish or distress;

and (4) that [Petitioner] violated a no contact order."  *Nastatos*, 2019 WL 2092016, at *10.

Since "the only real controverted issue" on the stalking charge was the effect Petitioner's

conduct had on the victim, the jury was instructed on the lesser included offense of harassment.

*See id*.  Relevantly, the lesser included offense required proof that:  (1) Petitioner communicated

with another person—the victim—by any form of written or electronic communication; (2) in a

manner which he knows; (3) is likely to cause annoyance or alarm.  *See id*.  Petitioner was

convicted of harassment but not of stalking. The Superior Court concluded that Petitioner failed

to establish prejudice under *Strickland* because trial counsel had successfully convinced the jury

not to convict Petitioner of the more serious charge, and because Petitioner's theory of defense to

harassment was the same implausible argument of impersonation.  *See id.*

The Delaware Supreme Court affirmed the Superior Court's judgment on post-conviction

appeal, finding:

> [T]he Superior Court relied on an abundance of evidence supporting
> the jury's findings. [Petitioner] admitted to sending messages and
> letters to [the victim], numerous witnesses testified that Petitioner

16

> pursued [the victim], and the jury responded to [Petitioner's] arguments about the level of harm by reducing the Stalking charge to Harassment.  While the Superior Court stated at trial it was near the end of its patience with defense counsel's errors, we agree with the Superior Court's conclusion here that there was sufficient evidence to justify a conviction even with all of the alleged errors.  The Superior Court analyzed the claims and reached a conclusion supported by the record—it did not abuse its discretion when determining that [Petitioner] failed to show prejudice from the alleged errors.

*Nastatos*, 2019 WL 7041891, at *5.

In order to prove the charges of NCBC, the State had to show that, while he committed in default of bail, Petitioner knowingly breached a condition of bail in connection with a felony.  *See* 11 Del. Code § 2113(c); 11 Del. Code § 2109(c).  Here, it was undisputed that there was a no-contact order in place while Petitioner was confined in default of bail on a felony charge of stalking.  Consequently, the only issue was whether Petitioner knowingly had contact with the victim.

After reviewing the record, the Court concludes that the Delaware courts reasonably determined the facts when it found that Petitioner was the person who sent the messages and letters to the victim.  The State proved Petitioner's contacts with the victim through texts from a telephone number he had represented as his own, Facebook messages from an account in his name bearing his photo, and handwritten letters addressed from him with his return address, connected to him by the content of the writing.  Additionally, in his police interview, Petitioner admitted that he contacted the victim repeatedly by text and through Facebook messages.  This evidence clearly demonstrated that Petitioner contacted the victim on numerous occasions. In turn, given the strength of the foregoing evidence, the Delaware state courts reasonably applied *Strickland* when holding that Petitioner did not demonstrate a reasonable probability that

trial counsel's failure to object to or address the following purported errors negatively affected the determination that Petitioner contacted the victim many times in breach of the no-contact orders: (1) the State's assertions during trial that Petitioner referred in his communications about having been in jail and having mental health issues; (2) an officer's testimony about prior statements made by the victim which were consistent with her testimony; (3) the fact that the victim initially stated that the communications came from Petitioner, instead of saying they *purportedly* came from Petitioner; and (4) the fact that trial court only gave one instruction about the few excluded Facebook communications.

Further, trial counsel's strategy with respect to the stalking charge was to demonstrate that Petitioner's communications did not place the victim in fear, but were merely annoying or alarming.   The fact that the jury convicted Petitioner of harassment instead of stalking indicates that trial counsel's strategy was successful,, and suggests that trial counsel's other four purported errors did not affect the verdict.  *See Nastatos*, 2019 WL 2092016, at *10.

Given these circumstances, the Court concludes that the Delaware state courts reasonably applied *Strickland* when concluding that Petitioner did not satisfy the prejudice prong of the *Strickland* test.  Accordingly, the Court will deny Claim One for failing to satisfy § 2254(d).

### B.  Claim Two: *Brady* Violation

In Claim Two, Petitioner contends that the State violated *Brady* by failing to supply trial counsel with copies of the victim's cell phone records, which Petitioner asserts may have contained *Brady* material.  (D.I. 16-13 at 36-41)  Petitioner presented this argument in his Rule 61 motion, and the Superior Court denied it as procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3) because Petitioner did not raise the issue in the proceedings leading to his judgment of conviction.  Petitioner presented the same argument to the Delaware Supreme

18

Court on post-conviction appeal, and also alleged that the Superior Court denied his right to due process by not allowing him access to his cell phone records during the Rule 61 proceeding. (D.I. 16-11 at 34-36)  The Delaware Supreme Court noted that the Superior Court incorrectly applied an earlier version of Rule 61(i)(3) that contained a "miscarriage of justice" exception to the bar.  *See Nastatos*, 2019 WL 7041891, at *5 n. 35.  Nevertheless, the Delaware Supreme Court still concluded that Claim Two was procedurally barred under the correct version of Rule 61(i)(3).  *See id*. at *5.

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed* that its decision rested on state law grounds.  This Court has consistently held that Rule 61(i)(3) is an independent and adequate state procedural rule precluding federal habeas review.  *See Robinson v. Metzger*, 2020 WL 1248198, at *4 (D. Del. Mar. 16, 2020); *McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006).  Thus, the Court cannot review the merits of Claim Two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner attempts to establish cause because appellate counsel did not raise the claim on direct appeal.  (*See* D.I. 3 at 13)  Petitioner never presented an ineffective assistance of appellate counsel claim based on appellate counsel's failure to raise a *Brady* violation in his state collateral proceeding or in his subsequent post-conviction appeal.  Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted,[4] and cannot excuse Petitioner's procedural default of the substantive *Brady* claim.  *See Edwards*, 529 U.S. at 453-54.

---

[4]*See* Del. Super. Crim. R. 61(i)(1), (2).

In the absence of cause, the Court will not address the issue of prejudice.  Additionally, the miscarriage of justice exception to the procedural default doctrine is inapplicable because Petitioner has failed to provide new reliable evidence of his actual innocence.  Therefore, the Court will deny Claim Two as procedurally barred.

## C.  Claim Three:  Cumulative Error

Petitioner argues that was denied his right to a fair trial because of a cumulative due process error.  (D.I. 3 at 14)  Petitioner presented a substantially similar argument in his Rule 61 motion.  Although the Superior Court did not specifically address Petitioner's cumulative error argument, it considered Petitioner's six IATC allegations cumulatively in finding that he failed to demonstrate prejudice from the alleged errors.  *See Nastatos*, 2019 WL 2092016, at *9-10. The Superior Court held that the alleged errors had little to no influence on the outcome of Petitioner's case, given the limited evidence that was needed to prove the crimes of NCBC and BCBDC, and also as reflected by the jury convicting Petitioner of the lesser included offense of harassment instead of stalking.  *See id*. at *10.

On postconviction appeal, Petitioner argued that the Superior Court misunderstood some of his IATC claims, failed to consider his assertions of prejudice, and overestimated the strength of the State's case.  (D.I. 16-11 at 15-19)  The Delaware Supreme Court disagreed, explaining that sufficient evidence supported his convictions and finding that Petitioner failed to show prejudice for his IATC allegations.  *See Nastatos*, 2019 WL 7041891, at *4-5.  Given these circumstances, Claim Three will only warrant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The United States Supreme Court has not recognized the concept of cumulative error. *See Bush v. Carpenter*, 926 F.3d 644, 686 n.16 (10th Cir. 2019)  Since there is no clearly

established Federal law with respect to a cumulative error argument, it would appear that the

Court's § 2254(d) analysis is over and Petitioner is not entitled to habeas relief for Claim Three.

However, the Third Circuit has recognized the cumulative error doctrine on habeas

review, holding that "a cumulative error argument constitutes a stand-alone constitutional claim

subject to exhaustion and procedural default." *Collins v. Sec'y of Pa. Dep't of Corr.* 742 F.3d

528, 542 (3d Cir. 2014).  Pursuant to the cumulative error doctrine,

> Individual errors that do not entitle a petitioner to relief may do so
> when combined, if cumulatively the prejudice resulting from them
> undermined the fundamental fairness of his trial and denied him his
> constitutional right to due process.  Cumulative errors are not
> harmless if they had a substantial and injurious effect or influence
> in determining the jury's verdict, which means that a habeas
> petitioner is not entitled to relief based on cumulative errors unless
> he can establish actual prejudice.

*Fahy v. Horn,* 516 F.3d 169, 205 (3d Cir.2008).  Given the Third Circuit's recognition of the

cumulative error doctrine in habeas proceedings, the Court will exercise prudence and review

Claim Three.

Here, the Delaware Supreme Court reviewed and rejected Petitioner's argument that "the

specific effects of each error [by trial counsel] caused individual and cumulative prejudice."

*Nastatos*, 2019 WL 7041891, at *4-5.  As previously discussed, this Court has also concluded

that the errors alleged in Petitioner's IATC claim did not cause any prejudice.  Petitioner has not

provided anything in this proceeding to demonstrate "actual prejudice."  Therefore, the Court

will deny Claim Three as meritless.

### D.  Claim Four:  Ineffective Assistance of Appellate Counsel

In Claim Four, Petitioner contends that appellate counsel was ineffective for failing to

raise the issue of cumulative error on direct appeal.  (D.I. 3 at 15)  Petitioner presented this

argument in his Rule 61 motion.  In her Rule 61 Affidavit, appellate counsel asserted that she did

21

not raise the issue of cumulative error because there was little chance of success for such an argument on direct appeal based on issues not preserved at trial.   (D.I. 16-3 at 60)  The Superior Court rejected Petitioner's argument after finding that appellate counsel made a reasonable strategic decision as to which arguments to raise on appeal.  *See Nastatos*, 2019 WL 2092016, at *12.  The Superior Court also concluded that Petitioner could not satisfy the prejudice prong of the *Strickland* standard.  *See id.*  The Delaware Supreme Court affirmed the Superior Court's decision on postconviction appeal, noting that the Superior Court properly relied on appellate counsel's Rule 61 affidavit when finding that she did not render ineffective assistance by opting not to pursue a cumulative error argument.  *See Nastatos*, 2019 WL 7041891, at *6.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel.  *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).  An attorney's decision about which issues to raise on appeal are strategic,[5] and an attorney is not required to raise every possible non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).  In the appellate context, the test for prejudice under *Strickland* "is not whether petitioners would likely prevail upon remand, but whether [the court of appeals] would have likely reversed and ordered a remand had the issue been raised on direct appeal."  *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000); *see also Smith*, 528 U.S. at 287-88 (explaining that the question when determining prejudice in the appellate context is whether the issues counsel did not raise "were clearly stronger" than the issues counsel did raise).

---

[5]*See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (stating counsel is afforded reasonable selectivity in deciding which claims to raise without specter of being labeled ineffective).

22

The record – including appellate counsel's testimony at the evidentiary hearing and the issues she raised on appeal – demonstrates that appellate counsel identified and thoroughly reviewed the possible issues to present.  (D.I. 16-13 at 131-32)  The Delaware state courts found appellate counsel's assertions to be credible, and Petitioner has not provided any clear and convincing evidence to contradict that factual determination of credibility.  *See Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 850 n.9 (3d Cir. 2017) (noting credibility findings are presumed correct absent clear and convincing evidence to the contrary).  Appellate counsel chose to advance what she deduced were the most meritorious claims, and the fact that she determined the cumulative error argument to lack merit does not mean that she provided ineffective assistance.  Notably, Petitioner has not demonstrated that his cumulative error argument is nonfrivolous, or that it would have been stronger on appeal than the issues appellate counsel did raise.  Given these circumstances, the Court concludes that the Delaware state courts reasonably applied *Strickland* when denying Claim Four.

### E.  Claim Five:  New Sentencing Hearing

Next, Petitioner contends that he is entitled to a new sentencing hearing under the Sixth and Fourteenth Amendments if the Court does not grant him relief for his other claims.  (D.I. 3 at 17)  Although not entirely clear, Petitioner appears to base this claim on the argument he presented on post-conviction appeal, namely, that appellate counsel was ineffective on direct appeal by arguing "that the trial judge sentenced [Petitioner] with a closed mind while simultaneously omitting a significant portion of the sentencing record that substantiated [her argument]."  (D.I. 16-11 at 44)

In his Rule 61 motion, Petitioner argued that appellate counsel provided ineffective assistance on direct appeal by "arguing that the sentencing judge was prejudiced and sentenced

[Petitioner] [with] a closed mind [… but omitted] the significant issue of the inappropriate comments trial counsel alleged the [Superior] Court made prior to sentencing." (D.I. 16-13 at 46) The Superior Court viewed Petitioner's argument as alleging that he was entitled to a new sentencing hearing because appellate counsel provided ineffective assistance by failing to file a motion to recuse the trial judge. (D.I. 16-13 at 46-51) The Superior Court rejected the argument, noting that the Delaware Supreme Court had already determined that the Superior Court did not sentence Petitioner with a closed mind. *See Nastatos*, 2019 WL 2092016, at *12. The Superior Court also rejected Petitioner's recusal argument because "it is the identical argument renamed." *Id*.

Petitioner appealed to the Delaware Supreme Court, arguing that the Superior Court had incorrectly construed his true argument. The Delaware Supreme Court affirmed the Superior Court's denial of the claim, but for a different reason:

> Finally, [Petitioner] argues that the Superior Court erred when it denied his claim asserting that he is entitled to a new sentencing hearing because the court misunderstood his argument. First, he argues that trial counsel was ineffective for failing to file a motion for recusal prior to the start of the sentencing hearing. And second, he argues appellate counsel was ineffective for unreasonably limiting the scope of the sentencing argument raised on direct appeal and omitting a significant factual component of the issue. He properly raised these issues to the Superior Court.
>
> The Superior Court found that these arguments were identical to the issue on direct appeal—whether the trial court sentenced him with a closed mind and based on impermissible and erroneous facts—and accordingly found the arguments had no merit. While we find that the arguments were not identical, we agree with the result.
>
> For this ineffective assistance of trial counsel claim, [Petitioner] notes that the sentencing judge denied actual bias, and we affirmed that the trial court did not sentence him with a closed mind or impermissible and erroneous facts. [Petitioner] argues that a motion for recusal would have been successful because of the appearance

24

of bias. But, even if a motion for recusal would have been successful, [Petitioner] does not effectively argue that a similarly non-biased sentencing judge would have reached a different sentencing result. Because [Petitioner] fails to show that but for the trial counsel's error, the resulting sentence would have been different, his claim fails under *Strickland*.

His ineffective assistance of appellate counsel claim fails for the same reasons his other ineffective assistance of appellate counsel claims fail. Appellate counsel is not required to make every argument. In addition to appellate counsel's affidavit, counsel's briefing at the time indicates she was informed on the record, thus affording her strategy substantial deference. [Petitioner] argues that there was no rational basis for not raising this issue and its omission made the appeal deficient. But, there are a multitude of rational reasons to not raise this issue, and omitting potentially meritorious evidence does not make the argument deficient. He does not overcome the substantial presumption that counsel's strategy was within the range of reasonableness, and the claim fails under *Strickland*.

*Nastatos*, 2019 WL 2092016, at *6-7.

During Petitioner's Rule 61 evidentiary hearing, appellate counsel testified that she pursued the "sentencing-with-a-closed-mind argument" on direct appeal because she believed it had merit. (D.I. 16-13 at 132) In her Rule 61 affidavit, appellate counsel explained:

14. Appellate counsel identified several errors in the trial court's sentencing decision that led to an unusually harsh sentence. Thus, counsel argued that the trial court sentenced [Petitioner] with a closed mind and based on impermissible and erroneous factors.

15. Counsel did not identify any other issues that she felt had a chance of success on its own or that added value to the issues that she did raise.

(D.I. 16-13 at 60) This record demonstrates that appellate counsel analyzed the possible arguments to present on direct appeal and made a purposeful decision not to present issues she did not deem possibly meritorious or relevant to the arguments she decided to pursue. Moreover, Petitioner has not demonstrated that the Delaware Supreme Court would likely have reversed

and ordered a remand if appellate counsel had included the factual information he believes would have supported his argument. Based on this record, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* when denying the argument in Claim Five.

### F.  Claim Six:  Unauthenticated Documents

In Claim Six, Petitioner contends that the admission of multiple Facebook messages and letters he sent to the victim violated his constitutional rights because those items were not properly authenticated. Although Petitioner initially raised this same claim on direct appeal, he voluntarily withdrew it before the Delaware Supreme Court decided his case. As a result, Petitioner has not exhausted state remedies for Claim Six.

Petitioner cannot return to the Superior Court to present this unexhausted argument, because a Rule 61 motion would be barred as untimely under Rule 61(i)(1) and successive under Rule 61(i)(2). Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant argument. Similarly, the exceptions to Rule 61(i)(1)'s time-bar and 61(i)(2)'s successive bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege a credible claim of actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant argument. Given these circumstances, the Court must treat Claim Six as exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the claim absent a showing of cause and prejudice or a miscarriage of justice.

To the extent Petitioner attempts to establish cause under *Martinez v. Ryan*, 566 U.S. 1, 8-9 (2012), by asserting that postconviction counsel was ineffective for failing to raise Claim Six in his Rule 61 proceeding (D.I. 3 at 20), the argument is unavailing. In *Martinez,* the Supreme

Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may establish cause for a petitioner=s procedural default of a claim of ineffective assistance of trial counsel.  *Id.* at 12, 16-17.  Here, Claim Six asserts a freestanding issue and not ineffective assistance of trial counsel.  Therefore, *Martinez* is inapplicable and does not provide cause for Petitioner's default.

In the absence of cause, the Court will not address the issue.  And, once again, the miscarriage of justice exception does not apply to this case.  Thus, the Court will deny Claim Six as procedurally barred.

### G.  Claim Seven:  Sentencing Errors

In his final claim, Petitioner contends that the Superior Court sentenced him with a closed mind, relied on impermissible information while sentencing, and "deviated significantly upward from the presumptive sentence of nonviolent felonies and misdemeanors which resulted in the imposition of cruel and unusual punishment in violation of [his] rights under the Eighth Amendment to the United States Constitution."  (D.I. 3 at 21)  Petitioner presented this claim on direct appeal.  (D.I. 16-2 at 18-31)  The Delaware Supreme Court separately considered the issue of whether Petitioner's sentence violated the Eighth Amendment from his arguments that he was sentenced with a closed mind or that the sentence was based on impermissible information.  *See Nastatos*, 2014 WL 1512887, at *4-6.

The Delaware Supreme Court examined the latter arguments under Delaware state law. To the extent Petitioner's instant claim is premised on those arguments, it asserts an error of state law that is not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S 62, 68 (1991).

To the extent Claim Seven is based on an Eighth Amendment violation, the Delaware Supreme Court denied the argument as meritless. Therefore, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Eighth Amendment forbids cruel and unusual punishment, and it applies to the States via the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 667 (1962). Two decisions of the United States Supreme Court summarize the applicable Eighth Amendment principles for non-capital sentencing: *Lockyer v. Andrade*, 538 U.S. 63 (2003), and *Ewing v. California*, 538 U.S. 11 (2003). In *Lockyer*, the Supreme Court extensively reviewed its prior cases dealing with Eighth Amendment challenges to criminal sentences, and concluded that it has "not established a clear and consistent path for courts to follow" in determining whether a particular sentence for a term of years can violate the Eighth Amendment." 538 U.S. at 72. The *Lockyer* Court explained that, for the purposes of analyzing an Eighth Amendment claim under § 2254(d)(1), the only clearly established governing legal principle is that "the gross disproportionality principle, the precise contours of which are unclear, [is] applicable only in the 'exceedingly rare' and 'extreme' case." *Id*. at 73. The *Lockyer* Court held that a recidivist's minimum sentence of fifty years was not grossly disproportionate to the two counts of petty theft that triggered the application of the recidivist statute. *See id*. at 67, 77.

In *Ewing*, the Supreme Court rejected the defendant's claim that a sentence of twenty-five years to life for stealing three golf clubs was "grossly disproportionate" to the crime. 538 U.S. at 20, 28. The *Ewing* Court reiterated that the Eighth Amendment "contains a 'narrow proportionality principle' that 'applies to noncapital sentences,'" which "does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences

28

that are 'grossly disproportionate' to the crime." *Id*. at 20, 23.  The *Ewing* Court explained that a court engaging in the proportionality analysis must compare the harshness of the penalty imposed upon the defendant with the gravity of his triggering offenses and criminal history.  *See id*. at 28-29.  "In weighing the gravity of [the defendant's] offense, [the court] must place on the scales not only his current felony, but also his long history of felony recidivism." *Ewing*, 538 U.S. at 29.

The Delaware Supreme Court cited to *Crosby v. State*, 824 A.3d 894, 908 (Del. 2003), when deciding that Petitioner's sentence did not violate the Eighth Amendment.  This Court has previously held that the Delaware Supreme Court's application of the principles articulated in *Crosby* to Eighth Amendment claims is consistent with the principles articulated in *Lockyer* and *Ewing*.  *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 290-91 (D. Del. 2006).  Therefore, the Delaware Supreme Court's decision in this case was not contrary to clearly established federal law.

The Court also concludes that the Delaware Supreme Court did not unreasonably apply clearly established federal law when finding that Petitioner's sentence was not so extreme as to satisfy the threshold inference of "gross disproportionality" needed to establish a violation of the Eighth Amendment.  Notably, Petitioner's sentence was not disproportionate when viewed in context with the circumstances of his case.  The relevant penalty for each of Petitioner's three felony BCBDC convictions was zero to five years in prison.  *See* 11 Del. Code §§ 2113(c)(1) and 4205(5).  For each conviction, the Superior Court sentenced Petitioner to two years in prison, followed by probation.  The penalty for each of Petitioner's sixteen NCBC misdemeanor convictions was up to one year in jail.  *See* 11 Del. Code §§ 2113(c)(2) and 4206(a).  The penalty for harassment also carries up to one year in prison.  *See* 11 Del. Code §§ 1311(b) and 4206(a).

29

The Superior Court sentenced Petitioner for harassment and for nine of the NCBC convictions to one year in prison, and to one year of probation for each of the seven remaining NCBC convictions.  (D.I. 16-2 at 40-48)  This record demonstrates that Petitioner's sentence was within the penalty ranges for his convictions as established by the Delaware General Assembly.

Additionally, when sentencing Petitioner, the Superior Court acknowledged that Petitioner was being sentenced outside of Delaware's sentencing guidelines.  The Superior Court made a full record of its reasons for its upward departure, stating, "So to the extent the sentence I'm about to impose exceeds that recommended by SENTAC, I cite excessive cruelty, prior criminal conduct, repetitive criminal conduct, prior criminal conduct, need for correctional treatment, undue depreciation of the offence, custody status at the time of some of the offenses, lack of remorse, lack of amenability, and vulnerability of the victim."  (D.I. 16-4 at 78-79)  The Superior Court concluded by stating:

> By my calculation, sir, that comes out to 16 years.  If my math is correct, that means you'll serve 12.  I think this is a case that merits a significant and long-term period of incarceration due to your repeated refusal to obey the law and the harm that you have caused to the victim. […]  You could have gotten more, but I thought this was appropriate.  Even though it's more than what the State asked for, I'm in a position to apply, based on my experience sitting here as a Judge for 23 years, what I consider egregious, intentional, mean-spirited conduct by someone against another person in order to obtain some sort of benefit, which I have yet to understand.

(D.I. 16-4 at 80)  This record demonstrates that the Superior Court considered Petitioner's sentence in proportion to the nature of his crimes.

Given these circumstances, the Court cannot conclude that the Delaware Supreme Court erred in concluding that Petitioner's sentence did not create an inference of gross

disproportionality.  Accordingly, the Court will deny Claim Seven for failing to satisfy §
2254(d).

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether
to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A
certificate of appealability is appropriate when a petitioner makes a "substantial showing of the
denial of a constitutional right" by demonstrating "that reasonable jurists would find the district
court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see
also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Additionally, when a district court denies a
habeas claim or petition on procedural grounds without reaching the underlying constitutional
claims, the court is not required to issue a certificate of appealability unless the petitioner
demonstrates that jurists of reason would find it debatable: (1) whether the claim or petition
states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in
its procedural ruling.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable
jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a
certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without holding an
evidentiary hearing or issuing a certificate of appealability.  An appropriate Order will be
entered.